UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMON MORONTA,

                Petitioner,

    - against -

UNITED STATES OF AMERICA,

                Respondent.

REPORT AND RECOMMENDATION

03 Civ. 4678 (GBD) (RLE)

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I. INTRODUCTION

Petitioner Ramon Moronta ("Moronta"), filed a *pro se* petition to vacate his sentence pursuant to 28 U.S.C. § 2255 which was received by the United States District Court, Southern District of New York on June 25, 2003. Petition under 28 U.S.C. § 2255 ("Pet."). Moronta pled guilty to conspiracy and drug possession charges, **id**. ¶¶ 2, 4, and was sentenced to a total of 151 months in prison. **Id**. ¶ 3. Moronta claims that his guilty plea was unconstitutional because it was entered into unknowingly and involuntarily and that the record of the "plea colloquy fails to establish a factual basis for a guilty plea." **Id**. ¶¶ 12B-C. Moreover, Moronta alleges that his attorney was ineffective in his representation of him, both at trial and on direct appeal. **Id**. ¶ 12A. For the reasons set forth below, I recommend that the motion to vacate the sentence be **DENIED**.

## II. BACKGROUND

On November 3, 2001, three days before his trial was scheduled to commence, Moronta pled guilty to one count of conspiracy to possess with intent to distribute one kilogram or more of mixtures containing a detectable amount of heroin and a second count for possession with intent

to distribute 539 grams of mixtures containing a detectable amount of heroin. The Pre-Sentence Report ("PSR") determined that Moronta's offense level should be 28, based solely on the amount of heroin that was actually distributed. Memorandum in Support of Petitioner's Motion Pursuant to 28 U.S.C. § 2255 ("Pet. Mem."), at 2. The PSR also recommended that Moronta be given a three point reduction for accepting responsibility for his role in the alleged crimes. **Id**. With the reduction, Moronta's sentencing level would be 25. **Id**.

Moronta appeared on April 19, 2002, for a **Fatico** [**United States v. Fatico**, 579 F.2d 707 (2d Cir. 1978)] hearing. Memorandum of Law in Opposition to Petition for Habeas Corpus ("Opp'n Mem."), Exh. D at 1. At the hearing, the court informed Moronta that, in order to qualify for safety valve relief,[1] he would be questioned about his alleged criminal activity. **Id**. at 2-3. The court warned him that if it was determined that he had lied, he would lose credit for acceptance of responsibility and be subject to enhancements to his offense level for obstruction of justice. **Id**. at 3-4.

The court subsequently found that Moronta was not credible and had made a "deliberate attempt to obstruct [the] proceedings." **Id**. at 84. The court therefore denied a downward adjustment and increased the offense level for obstruction of justice. **Id**. Similarly, the judge stated that it was "clear from Mr. Moronta's own testimony that he was involved in a conspiracy to distribute at least one kilogram of heroin." **Id**. at 92-93. Predicated on these findings, the court determined that Moronta's base offense level was 32, for intent to distribute between one

---

[1] Safety valve relief statutes allow a sentence lower than the statutory minimum when a defendant provides substantial assistance to the government, or, in certain instances, if the defendant has minimal criminal history, was not a high-level participant, and provides the government with a truthful and complete account of the offense. CRIM. PRAC. MANUAL § 103:39 (2007).

and three kilograms of heroin.  **Id**. at 95-96.  The two-level enhancement for obstruction of justice resulted in a total offense level of 34.  **Id**. at 103-04.  Moronta was sentenced to a term of incarceration of 151 months.  **Id**. at 114.

Moronta's conviction was affirmed by the Second Circuit on February 11, 2002, **United States v. Monegro**, 56 F. App'x 6 (2d Cir. 2002), and the United States Supreme Court denied his petition for *certiorari* on June 16, 2003.  **Moronta v. United States**, 539 U.S. 935 (2003).

### III. DISCUSSION

**A.**     **Timeliness**

A one-year statute of limitations applies to motions to vacate pursuant to 28 U.S.C. § 2255.  The limitations period runs from the latest of the following:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Moronta's conviction became final on June 16, 2003, when the Supreme Court denied his petition for *certiorari*.  His initial motion was filed June 25, 2003, and is therefore timely.

**B.**     **Ineffective Assistance of Counsel Claim**

The Sixth Amendment provides that an accused has the right to have the assistance of counsel to defend himself during a criminal prosecution.  That right includes assistance at every

3

stage of the proceedings.  *See* <u>United States v. Harrison</u>, 451 F.2d 1013, 1014 (2d Cir. 1971). In order to establish an ineffective assistance of counsel claim, a defendant must show:  (1) "that counsel's performance was [so] deficient" as to fall below "an objective standard of reasonableness;" and (2) "that counsel's errors were so serious as to deprive the defendant of a fair trial."  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  "Judicial scrutiny of counsel's performance must be highly deferential."  <u>Id</u>. at 689.  Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id</u>.  There must be a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694; *see* <u>Kieser v. New York</u>, 56 F.3d 16, 18 (2d Cir. 1995).  Moreover, where there is overwhelming evidence of the defendant's guilt, a court may disregard an ineffective counsel claim.  <u>United States v. Reiter</u>, 897 F.2d 639, 645 (2d Cir. 1990); *see* <u>Strouse v. Leonardo</u>, 928 F.2d 548, 556 (2d Cir. 1991).

     Moronta asserts that his counsel, Theodore Green ("Green"), was ineffective because he failed to adequately explain the ramifications of pleading guilty rather than going to trial.  Pet. Mem. at 5.  Moronta specifically alleges that counsel did not clarify how the sentencing guidelines would factor into the judge's decision.  <u>Id</u>.  Moreover, he claims that Green did not provide a Spanish interpreter during one of the most important meetings regarding his plea agreement, the discussion of the <u>Pimentel</u> [<u>United States v. Pimentel</u>, 932 F.2d 1029 (2d Cir. 1991)] letter.  <u>Id</u>. at 7-8.  Moronta also charges Green with neglect for incorrectly arguing the issues raised on appeal, and for failing to raise the lack of factual basis for his plea agreement as a claim on appeal.  <u>Id</u>. at 19.

4

Where an attorney provides mistaken advice regarding the possible sentence, a defendant may be entitled to relief. **United States v. Gordon**, 156 F.3d 376, 380-81 (2d Cir. 1998) (finding that there was objective evidence - a letter written by counsel to his client in which he "grossly underestimat[ed] Gordon's sentencing exposure" - to support the defendant's claim of mistaken advice). Failure of counsel to discuss the "advisability of accepting or rejecting the offered plea" may also result in relief for defendant. **Boria v. Keane**, 99 F.3d 492, 495 (2d Cir. 1996).

Greem provided an affidavit stating that he had made Moronta aware of all of the various sentencing outcomes he was facing. Opp'n Mem., Exh. A, Green Aff. ¶¶ 11-14. He also sent Moronta a letter, in Spanish, in which he discussed a number of possible outcomes, from the best to the worst case scenarios. **Id**., Exh. A, English translation of Green Letter at 1. In the letter, Green stated: "[T]here is a lot of talk on the tapes of significantly greater quantities, including an additional 11 kilograms of heroin and 200 kilograms of cocaine. The court may ultimately decide that this is just loose talk that does not amount to relevant criminal conduct, but it is impossible to predict what the court will do after trial." **Id**. Additionally, Green specifically said that if the judge found that Moronta would be "held to just one kilogram," he would be facing a sentencing range of 121 to 151 months and also advised him of the maximum penalty of life imprisonment. **Id**. at 2. Both Green's affidavit and letter show that he went through the sentencing guidelines and their effect on Moronta in sufficient detail for him to make an informed decision about whether to enter a plea. According to Green, there was an interpreter present at the vast majority of the meetings between him and Moronta, including the meeting in which they discussed the **Pimentel** letter. **Id**., Exh. A, Green Aff. ¶¶ 11-12. He claims that he met with Moronta on numerous occasions, with the assistance of an interpreter, to discuss

5

sentencing options so that Moronta would be able to understand them.  **Id**.

Finally, Moronta claims that Green was ineffective because he neglected to raise an entrapment defense before trial and he failed to raise a lack of factual basis issue on appeal.  Pet. Mem. at 19; **id**., Exh., Moronta Aff. ¶ 3.  Green testified that he did advise Moronta about possibly using an entrapment defense, but ultimately decided against it because the "the tapes included a number of statements from Moronta . . . referring to substantial additional quantities of cocaine and heroin which either had been distributed or might be available for future distribution."  Opp'n Mem., Exh. A, Green Aff. ¶¶ 4-5.  Moronta does not provide any evidence to suggest that Green's decision not to advance the defense, given the possible negative impact on Moronta's case, was anything but reasonable.

A defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  **Strickland**, 466 U.S. at 689 (*quoting* **Michel v. Louisiana**, 350 U.S. 91, 101 (1955)).  Moronta submits no evidence to rebut the presumption that Green's choices were "sound trial strategy" and done in an effort to produce the best outcome for his client.  Therefore, this claim should be **DENIED**.

**C.**     **Insufficient Basis for Plea Allocution Claim**

Guilty pleas must be "voluntary . . . knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  **Brady v. United States**, 397 U.S. 742, 748 (1970).  A plea will only be considered intelligent where the defendant first receives "real notice of the true nature of the charge against him."  **Smith v. O'Grady**, 312 U.S. 329, 334 (1941).  However, a defendant's statements made during his plea allocution "carry a strong presumption of verity."  **Blackledge v. Allison**, 431 U.S. 63, 74 (1977); **Mazzola v.**

6

**United States**, 2004 WL 1810656, at *3-4 (S.D.N.Y. Aug. 12, 2004).  Additionally, the Second Circuit has stated that "testimony [at a plea hearing] carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony . . ." **United States v. Juncal**, 245 F.3d 166, 171 (2d Cir. 2001); *see* **United States v. Hernandez**, 242 F.3d 110, 112-13 (2d Cir. 2001).

Moronta alleges that there was an insufficient factual basis for the court to accept his guilty plea based on the allocution he made during the plea hearing, and that he did not understand the charges.  Pet. Mem. at 15.  He argues that not only was he confused as to "what facts composed the crime charged in count one and two of the indictment," but also that he specifically disputed the amount of drugs that he was alleged to have had with respect to count one for conspiracy.  Pet. Mem. at 16-17.  In addition, he claims that, although he ultimately pled guilty to both counts without understanding the charges, the court "failed to assure itself that [he] understood the nature of the charges."  **Id**. at 15.

A conspiracy requires: "(i) an agreement between the defendant and others as to the object of the conspiracy; (ii) specific intent to achieve the objective of the conspiracy; and (iii) an overt act in furtherance of the conspiracy by the defendant or one of his co-conspirators." **United States v. Montour**, 944 F.2d 1019, 1024 (2d Cir. 1991) (*quoting* 18 U.S.C. § 371).  During Moronta's plea hearing he stated that he "agreed with Pedro Paulino to distribute . . . heroin." Opp'n Mem., Exh. C at 36.  He claimed that he had accompanied Paulino and another man "where [he] proposed assisting in the sale of 543 grams of heroin to a person who [he] later learned was an undercover cop." **Id**.  However, when asked if he ever had possession of the

7

drugs, Moronta claimed that he had not. **Id**. at 36-37. The court accepted Moronta's guilty plea.

Moronta's representations during the **Fatico** hearing illustrate why the court found it reasonable to hold him liable for one kilogram of heroin. He was recorded offering one kilogram to an undercover officer, and also said he would have another kilo available at a later date. **Id**., Exh. D at 44-46. He described the amount he was offering as "a whole car." **Id**. at 46. When asked if a "whole car" referred to a whole kilo, he stated that he did not know, and that "I just told [the undercover officer] like that. I don't understand things." **Id**.

Moronta also continuously lied about having a previous history of selling drugs. In a recorded conversation, he stated that he had previously made a sale of 700 grams of heroin. **Id**. at 27. When asked if he had said this to the undercover officer, Moronta responded that he had said it, but that he'd really "never done it" and had said it "just to tell him." **Id**. at 27, 39. Moronta was also questioned about a recorded conversation in which he claimed he had a route to Boston to deliver more drugs. **Id**. at 27. He stated that he did say that, but that he had no such route and that it was "just for talking." **Id**. When asked why he had represented himself to have sold drugs in the past, Moronta claimed that he "just said it instinctively." **Id**. at 83.

Pedro Paulino, a co-defendant and cousin of Moronta, testified at his own **Fatico** hearing that he had heard his cousin say that he had "previously sold three kilos of heroin to a guy on credit." **Id**. at 60, 64. Paulino also stated that Moronta had previously said that when people do not pay for their drugs "they're going to get hurt." **Id**. at 62.

Statements made to the assistant United States attorney at Moronta's proffer[2] illustrate

---

[2]A proffer session is a meeting between a defendant and the government in which the defendant will offer information about alleged crimes. If the government is satisfied that the defendant has told the truth, it may offer a plea or immunity agreement. *See* Opp'n Mem. Exh. D at 36-37.

Moronta's attempts to deny responsibility and deceive the court. When asked who had been given the drugs for the planned sale, Moronta said they were given to his cousin, Paulino. **Id**. at 36. At the **Fatico** hearing, however, Moronta said they were given to him. **Id**. at 35. When the government attorney questioned Moronta about the discrepancy, Moronta stated that his "mind was very foggy" at that time. **Id**. at 36. Similarly, when asked why he had stated that he had cocaine coming from Puerto Rico, Moronta again attempted to avoid blame by alleging that his statement "wasn't the truth," and was said "just in order to say something." **Id**. at 39.

Moronta's allocution concerning his involvement in the drug sale provided a sufficient basis for the court to accept his guilty plea for count one, conspiracy to possess with intent to distribute one kilogram or more of mixtures containing a detectable amount of heroin. Although Moronta was arrested before he could deliver the remainder of the one kilogram of heroin, it is clear that he intended to do so and he admitted that he was in the process of securing the additional amount in the near future to the undercover agent. **Id**. at 44-46. The record shows that Moronta repeatedly lied to the court during his allocution. Given this record, his claim that he understood neither what he was pleading guilty to nor the charges that made up the indictment is not credible. For these reasons, I recommend that this claim be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, I recommend that the claims raised in Moronta's motion be **DISMISSED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable George B. Daniels, 500 Pearl Street, Room 630, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Sec'y of Health and Human Servs.**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: May 9, 2007**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

Petitioner, *Pro Se*
Ramon Moronta
Inmate Register No. 83337-054
FCI - Canaan
P.O. Box 200
Waymart, PA 18472

Counsel for Respondent
John P. Collins, Jr.
U.S. Attorney's Office, SDNY
300 Quarropas St.
White Plains, NY 10601